# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| KATHY L. MAY, | ) |
| | ) |
| *Plaintiff* | ) Civil Action No. 5:10cv00057 |
| v. | ) |
| | ) REPORT AND |
| MICHAEL J. ASTRUE, | ) RECOMMENDATION |
| Commissioner of Social Security, | ) |
| | ) By: Hon. James G. Welsh |
| *Defendant* | ) U. S. Magistrate Judge |

Plaintiff, Kathy L. May, brings this action pursuant to 42 U.S.C. § 405(g) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, as amended, ("the Act"), 42 U.S.C. §§ 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

On March 31, 2007 the plaintiff protectively filed an application for SSI. (R.78,141-146). In her application the plaintiff alleges a disability onset date of August 13, 2006 due to right shoulder bursitis, degenerative disc disease, and left-eye glaucoma. (R.141-146,153,172,197,207,244,245-247,270,292). Her application was denied initially, on reconsideration, and again following an administrative hearing. (R.8-23,43-77,78-84,87-88). In his December 17, 2009 written decision the administrative law judge ("ALJ") found that the

plaintiff retained the functional ability to perform light work, [1] including her previous job as an assistant retail store manager. (R.8-23). After the ALJ's issuance of his adverse hearing decision, the plaintiff's requested Appeals Council review (R.6); her request was denied (R.1-4), and the ALJ's written decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481.

On December 13, 2010 the Commissioner filed his Answer to the plaintiff's Complaint along with a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered on December 15, 2010, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities and no timely request for oral argument has been made. [2] The following report and recommended disposition is submitted.

I.  **Recommendation**

---

[1] "*Light work*" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, [*9] or when it involves sitting most of the time generally involved is some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10.

[2] WDVa. Gen. Rule 4(c)(2) directs that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

Based on a thorough review of the administrative record and for the reasons outlined hereinafter, the plaintiff's contentions are without merit. It is, therefore, recommended that the plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

## II. Summary

As outlined in her disability reports, in her hearing testimony and in the medical record, the plaintiff's basic contention is that she is no longer able to engage in competitive work activity due to the combined effects of degenerative disc disease, right shoulder bursitis, and left-eye glaucoma. (R.141-146,153,172,197,207,244,245-247,270,292).

In her brief the plaintiff argues that the ALJ's determination that she had the residual functional capacity to perform light work was not supported by substantial evidence and was based erroneously on his rejection on the opinions of her treating orthopedist. Addressing each of the plaintiff's contentions in his brief the Commissioner outlines the multiple evidentiary bases for the ALJ's findings and his discount of the treating physician's opinions. Additionally, he points-out the fact that the plaintiff's alleged disability onset date is only one day after she was involuntarily terminated from her job due to a conflict with other employees.

## III. Standard of Review

3

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard. "*Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ at 642). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (quoting *Craig*, 76 F.3$^d$ at 589). The ALJ's conclusions of law are, however, not subject to the same deferential view and are to be reviewed *de novo*. *Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000).

IV. **Facts**

The plaintiff in this case was forty-eight years of age at the time of her alleged August 13, 2006 disability onset date. (R. 50,153,197). She attended school through the 10th grade,[3] and her

---

[3] Pursuant to the agency's regulations a person with a 7th grade through the 11th grade formal education has a limited education, meaning an ability in reasoning, arithmetic and language skills, but not enough to allow an individual to do most of the complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R.§ 416.920(c).

4

past relevant work was as an assistant retail store manager for Goodwill Industries. (R.50,52-53,154,159,161-162).

As a result of an injury suffered while working, the plaintiff underwent surgery to repair her right rotator cuff in August 2004. (R.54,244). During a follow-up visit, her treating orthopedist, G. Edward Chappell, M.D., found the plaintiff to have an eight percent permanent impairment to her right upper extremity and a five percent whole person impairment. (R. 207). Following the plaintiff's recovery from this 2004 surgery, she returned to work without restriction. (R.62-63,69,154,161).

Between May 2006 and January 2007 the plaintiff was seen and treated at Shenandoah Eye Care for problems with her vision. (R.220-223). She was found to have primary open angle glaucoma, and Travatan was prescribed for the condition. (R.223). She did not again seek any eye care until the Spring of 2009, when she was seen at the University of Virginia Ophthalmology Clinic to have her eyes examined and to have her left eye glaucoma checked. (R.326-333). *Inter alia,* these examination records show she had voluntarily stopped using the Travatan drops and that her left-eye glaucoma had not significantly changed. (*Id.*)

Twice during the month of July and again on August 1, 2006 the plaintiff saw Wayne F. McNett, M.D., for treatment of a urinary tract infection and a pelvic inflammation. On none of these occasions did the plaintiff make any mention of any back or shoulder pain or any vision complication stemming from the glaucoma in her left-eye. (R.209-214).

5

As noted previously, on August 12, 2006, the plaintiff was fired from her position at Goodwill;[4] however, when she subsequently applied for SSI, she alleged that she had become totally disabled the very next day.

In June 2007 the state agency arranged for the plaintiff to have x-rays taken of her right shoulder and to undergo a consultative physical examination by Christopher Newell, M.D. (R. 234-250). When seen on June 19, 2007, the plaintiff told Dr. Newell that she did limited meal preparations, was independent in dressing and bathing, drove a car, and tried to assist in caring for her six-month old granddaughter. (R. 245). On examination, Dr. Newell found that the plaintiff walked with a normal gait. (R. 246). Her visual acuity with glasses was 20/30 in the right eye and 20/100 in the left eye. (R. 246). She was found to have some tenderness over paracervical musculature and lumbar spine, pain posteriorly over her right should muscle, a positive straight leg raise on her right side, and decreased range of motion of her cervical spine, dorsolumbar spine, and right shoulder. (R. 247). Her muscle strength, grip strength, flexors, extensors, and manual dexterity were all within normal limits in both arms, and Dr. Newell diagnosed her to have right shoulder bursitis, a cervical strain, a lumbar radiculopathy, and some left-eye glaucoma. (R. 247-248).

Based on the plaintiff's self-reported medical history and Dr. Newell's clinical examination and findings, he concluded that the plaintiff retained the functional ability to stand

---

[4] The plaintiff's termination was not based on her alleged medical disability. According to the plaintiff, she was involuntarily terminated, because "a bunch of girls said things that weren't true" and "because she was strict with [the girls]." (R. 15).

6

Case 5:10-cv-00057-MFU-JGW   Document 15   Filed 08/24/11   Page 6 of 13   Pageid#: 415

and walk six hours in an eight-hour workday, sit eight hours in an eight-hour workday, lift ten pounds frequently, lift twenty pounds occasionally, perform limited postural activities (bending, stooping and squatting), occasionally feel and grasp with her right upper extremity, and should avoid reaching overhead with her right upper extremity. (R.247).

In June 2008 the plaintiff began to receive her primary medical care from Denice Gochenour, F.N.P., at Harrisonburg Community Health Center. (R.276-311,344-347). She was seen and treated by Nurse Gochenour for various complaints, including hypertension, headaches and back pain. (*Id.*) In addition to noting prescription use of Ibuprofen and Vicodin as needed for pain relief, Nurse Gochenour's office notes also show that during the Summer of 2008 the plaintiff had a paralyzed daughter and was caring for four grandchildren under the age of two in her home. (R. 280-282,303-305,345).

In September 2008, an x-ray of the plaintiff's lumbar spine demonstrated degenerative disc disease and spondylolysis. (R. 292). An MRI the following month also indicated degenerative disc dehydration and facet joint disease at L4/5 and L5/S1, showed a broad base bulging disc at L4/5, and pars defects without evidence of any vertebral displacement. (R.290). In November 2008, Nurse Gochenour referred the plaintiff to Thomas Weber, M.D., at RMH Orthopedics for further treatment of her back pain. (R. 302).

Following his initial clinical evaluation, Dr. Weber reaffirmed the previous diagnosis of degenerative disc disease with herniation and spondylolisthesis. (R. 271-272). He found the

7

plaintiff's gait to be normal, her neck to have good range of motion, to have lower back pain on extension, on side-bending and on rotation, and to exhibit normal strength and sensation. (R. 271-272). He recommended physical therapy, use of a TENS unit, and medication. (R.272).

In three follow-up office visits between December 2008 and February 2009, the plaintiff reported to Dr. Weber that she was getting some relief from the physical therapy, but was still experiencing pain. (R.270). Although Dr. Weber recommended epidural steroid injections to mitigate her pain further, the plaintiff refused, and Dr. Weber alternatively suggested water therapy. (R.270). In February 2009 Dr. Weber concluded that he had exhausted "all the tricks" that he knew to help her with pain relief and referred the plaintiff to a pain management specialist. (R.268).

When seen by Dr. Weber for a follow-up appointment in May, the plaintiff complained of pain "so bad" she was limited in her daily activities, and she asked Dr. Weber to complete a functional activities disability-related form. (R.335, 337-341). Without any testing or functional assessment, Dr. Weber completed the form. Therein, he opined that the plaintiff had significant disability due to degenerative disc disease and that she could lift and carry only five pounds, stand and walk for a total of two hours in an eight-hour day, sit for a total of four hours in an eight-hour day, could not perform any postural activities, had limited visual acuities, and had environmental restrictions due to her back and eyes. (R.335,338-340). Dr. Weber also opined that the plaintiff was totally disabled from any type of work activity. (R. 341)

8

## V. Analysis

On appeal the plaintiff argues that the ALJ committed reversible error by failing to give controlling weight to Dr. Weber's opinion that she is disabled. In opposition, the Commissioner argues that the ALJ's properly evaluated Dr. Weber's opinions and declined to give this treating physician's opinion concerning the nature and severity of her impairments controlling weight, because those opinions were not medically well-supported in the record and were in fact inconsistent with the substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(1)-(2). In other words, according to the Commissioner's argument the ALJ has the discretion to give less weight to the opinion of this treating physician, because it was inconsistent with other substantial evidence. *See Mastro v. Apfel*, 270 F.3$^d$ at 178.

### A.

Without question, to the extent the plaintiff's appeal in this case relies on Dr. Weber's conclusory opinion that she is "[t]otally disabled from any work activity," her reliance is misplaced. While the ALJ must consider opinions from treating sources regarding whether a claimant is disabled, the final determination rests with the Commissioner and no special weight can be attached to medical opinions addressing the ultimate issue of disability. 20 C.F.R. § 416.927(e)(2)-(3); *see also Morgan v. Barnhart*, 142 F. App'x. 716, 721-22 (4th Cir. 2005) (an "ALJ is under no obligation to give a treating physician's legal conclusions any heightened evidentiary value.").

9

**B.**

On review, the plaintiff contention that the ALJ lacked substantial evidentiary basis to reject Dr. Weber's opinion is equally lacking in merit. Contrary to her argument, the ALJ's decision shows that he in fact evaluated and weighed Dr. Weber's medical opinions in full accord with established Fourth Circuit precedent. *See Hines v. Barnhart*, 453 F.3$^d$ 559, 563 (4th Cir. 2006).

In making this analysis the ALJ must consider: "(1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist." *Id.*; 20 C.F.R. § 416.927(d). Consistent with this obligation, the ALJ in the instant case expressly recognized the treating relationship between Dr. Weber and the plaintiff; however, he also took note of Dr. Weber's equivocal clinical findings, the inconsistencies between the plaintiff's self-reported daily activities and Dr. Weber's opinion, the inconsistencies between Dr. Weber's opinion and the plaintiff's irregular longitudinal medical record, the contrary findings of the state agency reviewers, and the contrary testing and examination results found by Dr. Newell. (R.18,176,245,281-28). As part of his review of Dr. Weber's functional assessment, the ALJ also expressly made reference to the fact that the plaintiff's treatment had been routine and conservative; he took note of the fact that Dr. Weber's opinion was conclusory in nature, and he took note of the fact that Dr. Weber's responses on the form appeared to have been based primarily on the plaintiff's personal reporting, not on medically established evidence. (R.18,54,176,244-245,281-282,290,292,335). *See Mastro* 270

10

F.3$^d$ at 178; see also 20 C.F.R. § 416.927(e). Additionally, the ALJ appropriately gave little weight to Dr. Weber's visual impairment opinion because of his lack of the relevant expertise and training. (R.18). These findings are, therefore, both consistent with the *Hines* analytical framework and provide a well-supported substantial evidentiary basis in fact for his conclusion, that Dr. Weber's opinion was not entitled to controlling or even significant decisional weight.

### C.

In her brief the plaintiff also objects to the ALJ's express mention of the fact that she did not leave her position at Goodwill because of a medical disability, but was fired. Although she contends in her brief that this is irrelevant and was improperly considered by the ALJ, common sense strongly suggests otherwise. *See Soohoo v. Astrue,* 2010 U.S.Dist. LEXIS 23582, *2 (CDCal, 2010) (it is "reasonable for the ALJ to infer that, because Plaintiff stopped working because she was terminated, not because she was in too much pain to work, she was capable of working"). At the very least, in the instant case one would have expected the plaintiff to have sought medical treatment if her health had in fact suddenly deteriorated. As the record shows, however, following her termination she saw no health care provider for nine months; and when she did see a doctor, it was Dr. Newell that she saw; and she saw him only because the state agency had a consultive examination.

## VI.  Proposed Findings of Fact

11

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The ALJ's residual functional capacity determinations is based on substantial evidence;

2. The ALJ properly and adequately evaluated Dr. Weber's opinion, and his credibility determination was based on substantial evidence;

3. The ALJ's finding that the plaintiff retained the ability to perform work as an assistant retail store manager is supported by substantial evidence and is consistent with his residual functional capacity assessment; and

4. All facets of the Commissioner's final decision in this case are supported by substantial evidence, and it should be affirmed.

## VII. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VIII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: August 24, 2011

/s/ *James G. Welsh*
United States Magistrate Judge